# IN THE MATTER OF THE ADOPTION OF LEE, JONG HUAN AND AHN, SUH WON

JDR. Nos. 182/73 and 209/75

Municipal Court of the Virgin Islands

Div. of St. Croix at Christiansted

September 20, 1976

JEFFREY L. RESNICK (JAMES & RESNICK), Christiansted, St. Croix, V.I., *for petitioners Margaret Ahn Hodges and John Thomas Hodges*

RICHARD H. M. LAWE, Assistant Attorney General, Christiansted, St. Croix, V.I., *for the government*

FINCH, *Judge*

## MEMORANDUM OPINION

These matters are before the Court on Motions filed by the Government of the Virgin Islands for the following: a new trial; a rehearing; relief from judgment; and, a stay of proceedings. Ann and Thomas Hodges, husband and wife, filed separate petitions for the adoption of Jong Huan Lee and Suh Won Ahn. The petition for the adoption of Ahn was filed on July 18, 1973; the petition for the adoption of Lee was filed on July 15, 1975. The order for the adoption of Ahn was entered on March 14, 1974, and that of Lee on February 13, 1976. The orders of adoption directed that the

name Ahn, Suh Won be changed to Margaret Ahn Hodges and that the name Lee, Jong Huan be changed to John Thomas Hodges.

On March 3, 1976, Thomas and Ann Hodges filed a motion for an order directing the Commissioner of Health to issue a birth certificate for Margaret Ahn Hodges and John Thomas Hodges. The motion had as its basis 19 V.I.C. Section 836, which provides in pertinent part that, "A certified decree of every adoption for every child *born* in the Virgin Islands shall be forwarded by the Clerk of the Court to the Registrar of Vital Statistics. . . ." 19 V.I.C. Section 836 (Emphasis added). That section thereafter requires that the registrar, "shall prepare a new certificate of birth. . . ." cited, *op. cit.*

The Motions for an order directing the Commissioner of Health to issue birth certificates came on for hearing on March 16, 1976, at which time the Government of the Virgin Islands appeared through its Assistant Attorney General and represented to the Court that it had no objection to the issuance of the new birth certificates by the Commissioner of Health, and, thereafter, joined in the motion of the Petitioners. On March 19, 1976, this Court, by order, directed the Commissioner of Health to issue a new birth certificate. Ten days later, the Government discovered that it was "in inadvertent error" in taking the position that the statute was invalid and in joining in Petitioners' motion, and as a result of this discovery, moved the motions presently before the Court.

The Government now contends that birth certificates and issuance of birth certificates are creatures of statute and the law governing such certificates are to be strictly construed, and further, since the Commissioner does not have the power to issue a new birth certificate, this Court cannot cloak him with such authority.

197

Petitioners on the other hand contend that the denial of a birth certificate to foreign-born children who are adopted in the Virgin Islands is in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution and Section 3 of the Revised Organic Act of 1954. Petitioners suggest that the discrimination found in the statute is as a result of legislative oversight since, "at the time of codification, adoption of foreign-born orphans was virtually unknown in the Virgin Islands." Petitioners' *Memorandum of Law*, p. 2.

In further support of this contention, Petitioners cite 19 V.I.C. Section 834, which allows the Commissioner of Health to issue a birth certificate if a "newly born or exposed child of unknown parentage" is found in the Virgin Islands. Petitioners argue that if these two adoptees "had been born of a transient Korean mother upon stopping in the Virgin Islands for one day, and had been abandoned by such unknown mother, they would be entitled to a Virgin Islands birth certificate." Petitioners' *Memorandum of Law*, p. 2.

■■ It is axiomatic that classifications based on race, nationality, or alienage are highly suspect, indeed, inherently so, and subject to close judicial scrutiny. Graham v. Richardson, 403 U.S. 365, 371 (1971). Chapman v. Gerard, 8 V.I. 470, 472. However, classifications have been allowed to stand in situations where no fundamental interests were involved. McGovern v. Maryland, 366 U.S. 420 (1961). Legislatures are presumed to have acted within their constitutional power despite the fact that their laws might result in some inequity.

■ The inquiry then must be directed to the existence or nonexistence of some fundamental right violated by 19 V.I.C. Section 836. Petitioners concede that the issuance of the birth certificate "would not confer citizenship and would confer no rights on such children not already

granted by virtue of their adoptions." Petitioners' *Memorandum of Law*, p. 7. The only benefit which a birth certificate has could only be described as a convenience. As it was so aptly put by Petitioners, "it would be the difference between registering for school, social security, the military service, college, driver's license, voter registration, etc., with such a document; as opposed to the necessary aggravation in explaining to each such bureaucracy that the 8-½" by 11" Decree of Adoption is what they have instead." Petitioners' *Memorandum of Law*, p. 7. Are the negative circumstances enumerated by Petitioners so egregious as to run afoul of some specific constitutional prohibition? This Court thinks not; this Court is of the opinion that no specific constitutional prohibition has been violated. It may well be that the Legislators had in mind the possibility that an alien born child, after adoption, could obtain a *Certificate of Birth Data From Immigration and Naturalization Records*, Form G-350 which gives details as to birth, adoptee's new name and parents which is information required by government agencies or other organizations as a prerequisite for benefits.

Petitioners claim that since 19 V.I.C. Section 834 allows for the issuance of a birth certificate to a child newly born or exposed of unknown parentage, then 19 V.I.C. Section 836 as read is an oversight. The short answer to this contention is that 19 V.I.C. Section 801 et seq. which has as its basis Bill No. 80, passed on December 21, 1953 by the Seventeenth Legislative Assembly, was intended to bring records of vital statistics in par with other state legislation. See Act Legislative Assembly, approved December 21, 1953, Bill No. 80; *Law to Provide a Uniform Method of Registration of Vital Statistics in the Virgin Islands*. If this legislation is defective because of an oversight, then such oversight has afflicted many such state legislations and the Revised Uniform Adoption Act.

199

Whether intentional or not, the convenience of a foreign-born adoptee in having a state birth certificate was not a matter that received attention in the codification of traditional vital statistics legislations, nor indeed did it receive attention in the Virgin Islands.

Although the relief prayed for by Petitioners may be harmless; and being ever mindful of Charles Dickens' reminder of the assinine depths to which the law could sink, nevertheless, this Court must beat a hasty retreat from the murky waters into which it heretofore so fearlessly plunged. This Court is not the proper forum to effectuate the change which might be needed in 19 V.I.C. Section 836. This task is best suited to the Legislature.

The motion of the Government to set aside the order requiring the Commissioner of Health to issue a new birth certificate is granted.